IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSSETS

| | |
|---|---|
| JANICE FASSINA, individually and on behalf of all others similarly situated, | Case No. _____ |
| Plaintiff, | JURY DEMAND |
| v. | |
| LIBERTY MUTUAL FIRE INSURANCE COMPANY, | |
| Defendant. | |

**CLASS ACTION COMPLAINT**

NOW COMES the Plaintiff, Janice Fassina ("Plaintiff"), individually and on behalf of all others similarly situated, and states and alleges the following for her Complaint against Defendant Liberty Mutual Fire Insurance Company ("Defendant" or "Liberty"):

**OVERVIEW OF CLAIMS**

1. This lawsuit concerns only actual cash value ("ACV") coverage for buildings and structures. This lawsuit does not concern replacement cost value ("RCV") coverage. All the claims set forth in this pleading only concern property insurance coverage for structural damage (*e.g.*, homes, buildings, and other structures) and *not* personal property (*e.g.*, clothes and furniture).

2. Pursuant to Defendant's property insurance policy forms at issue, ACV payments are to be made prospectively, that is, prior to the policyholder undertaking repairs to damaged buildings and structures. On the other hand, RCV payments are made retrospectively, after repairs have been completed.

3. Defendant calculates ACV under the "replacement cost less depreciation" ("RCLD") methodology. When calculating ACV for buildings and structures under the RCLD methodology, Defendant estimates the full amount of labor and new materials required to repair or replace the property, then subtracts depreciation for physical deterioration.

4. Courts in several jurisdictions hold that the RCLD methodology is reasonably intended to result in an ACV payment to the policyholder in an amount that allows the policyholder to return the damaged property to its *status quo ante*, thereby precluding the withholding of labor from ACV payments. *See generally Mitchell v. State Farm Fire and Cas. Co.*, 954 F.3d 700, 706-07 (5th Cir. 2020). An exception occurs—not at issue in this lawsuit—when a property insurer expressly states in its policy forms that it can withhold labor from an ACV payment. *E.g.*, *Kurach v. Truck Ins. Exchange*, 235 A.2d 1106 (Pa. 2020).

5. This lawsuit concerns the withholding of certain labor that Defendant, through its computerized claims estimating software, itself determined will be incurred if the policyholders undertake repairs. However, this lawsuit does *not* concern labor that is expressly permitted to be withheld under the express terms of Defendant's insurance policies.

6. Property insurers attach different labels to justify the withholding of certain labor from ACV payments, such as "paid when incurred" or "labor depreciation." *E.g.*, *Mills v. Foremost Ins. Co.*, 511 F.3d 1300 (11th Cir. 2008) (property insurer cannot withhold labor from ACV payments because it has not been incurred); *Mitchell*, 954 F.3d at 706-07 (property insurer cannot withhold ordinary labor from ACV payments under the auspice of "depreciation").

7. Regardless of the artificial label affixed by the property insurer to the practice of withholding labor from an ACV payment, the result is the same—namely, a deficient ACV

payment. This lawsuit seeks to remedy the improper withholdings of labor from Plaintiff's and class members' ACV payments.

## PARTIES

8. Plaintiff Janice Fassina is a citizen and resident of Jefferson County, Alabama. At all times relevant hereto, Fassina owned a dwelling located at 1409 8th Avenue, Fultondale, Alabama (the "Fassina Home").

9. Defendant Liberty Mutual Fire Insurance Company is organized under the laws of the State of Wisconsin with its headquarters located at 175 Berkley Street, Boston, Suffolk County, Massachusetts. Defendant is authorized to and does sell property insurance for buildings and structures in several states, specifically including Alabama, Arizona, Connecticut, Illinois, Kentucky, Maryland, Mississippi, Ohio, Tennessee, Texas, Utah, Virginia, Vermont, Washington, and Wisconsin.

10. Defendant is an insurance company within the Liberty Mutual® Insurance Group, which is the ultimate controlling parent of Defendant and its headquarters is located at 175 Berkley Street, Boston, Suffolk County, Massachusetts.

## VENUE AND JURISDICTION

11. On information and belief, this Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d) ("CAFA").

12. Defendant's principal place of business is located in the eastern division of this Judicial District.

**FACTS**

A.     **The Fassina Property Insurance Policy and Casualty Loss**

13.    Defendant is a national insurer that sells property insurance coverage for, *inter alia*, structures and buildings across the United States, specifically including Alabama, Arizona, Connecticut, Illinois, Kentucky, Maryland, Mississippi, Ohio, Tennessee, Texas, Utah, Virginia, Vermont, Washington, and Wisconsin.

14.    Defendant's property insurance forms sold in Alabama, Arizona, Connecticut, Illinois, Kentucky, Maryland, Mississippi, Ohio, Tennessee, Texas, Utah, Virginia, Vermont, Washington, and Wisconsin are materially identical as it relates to the contractual dispute set forth herein.

15.    The laws in Alabama, Arizona, Connecticut, Illinois, Kentucky, Maryland, Mississippi, Ohio, Tennessee, Texas, Utah, Virginia, Vermont, Washington, and Wisconsin are materially identical as it relates to the contractual dispute set forth herein, or at the least, any differences would be manageable in the class context. *See Steinberg v. Nationwide Mutual Insurance Co.*, 224 F.R.D. 67, 76 (E.D.N.Y. 2004) (involving a 46-state putative class claiming breach of standard form insurance contracts). Specifically, these states are all "replacement cost less depreciation" states for purposes of determining actual cash value under property insurance policies or preclude the depreciation of labor by court decision or state administrative agency.

16.    Defendant engaged in the challenged insurance coverage practices described herein in a uniform manner and pursuant to a uniform policy.

17. At all times relevant hereto, Fassina was insured pursuant to an insurance contract whereby Defendant agreed to insure, *inter alia,* the Fassina Home against property damage, bearing Policy no. H3225804179440 (the "Fassina Policy").

18. The Fassina Policy provided insurance coverage for direct physical loss to the buildings and other structures located on the insured premises, except as specifically excluded or limited by the Fassina Policy.

19. Pursuant to the Fassina Policy, Fassina paid Defendant an annual premium in exchange for insurance coverage. The required premiums were paid at all times relevant to this Complaint.

20. On or about January 25, 2021, the Fassina Home suffered accidental direct physical loss due to a tornado ("Fassina Loss").

21. The Fassina Policy was in effect at the time of the Fassina Loss, and the Fassina Loss is compensable under the terms of the Fassina Policy. As it relates to the Fassina Loss, there is no applicable exclusion.

22. Fassina notified Liberty of the Fassina Loss and made a claim against the Fassina Policy.

23. After its inspection, Liberty determined that the Fassina Loss was covered by the terms of the Fassina Policy.

24. Liberty calculated its ACV payment obligation to Fassina pursuant to the RCLD methodology.

25. The Fassina Policy, and the other property forms that are the subject of this lawsuit, do not permit the withholding of labor as depreciation as described below. In contrast with the Policy, certain policies of insurance expressly allow for the depreciation of "labor" as described

herein. The type of form or endorsement will be referred to herein as a "labor depreciation permissive form." The Policy does not contain a labor depreciation permissive form.

### B. Defendant's Calculation of Plaintiff's ACV Payments

26. In adjusting the Plaintiff's claim, Defendant affirmatively and unilaterally chose to use the RCLD methodology to calculate the loss and make its ACV payments.

27. Defendant did not calculate any portion of the Plaintiff's loss by reference to or analysis of any alleged increase or decrease in the market value of her home, or the market value of any portion of her property. Defendant did not conduct an appraisal of the Plaintiff's home.

28. Defendant has waived, and is estopped from asserting, any right to contend that ACV should have been calculated under any methodology other than the RCLD methodology.

29. Defendant used commercially-available computer software called Xactimate® from Xactware Solutions, Inc. to make RCLD calculations.

30. Defendant calculated the RCV of Plaintiff's damaged property through Xactimate® price lists as reflected on estimates provided to the Plaintiff.

31. Defendant then used the same Xactimate® price lists to calculate the depreciation for the Plaintiff's damaged property.

32. Plaintiff was underpaid and deprived of the use of her money from the time she should have received it until the date she recovered the wrongfully withheld labor amounts, as more fully described below.

### C. Defendant's Practice Of Withholding Labor From ACV Payments

33. For the Plaintiff and putative class members, Defendant has previously used, and continues to use through the present date, Xactimate® software to calculate ACV payments. Xactimate® is used by both insurers and contractors to calculate the cost of rebuilding or repairing

damaged property and is also used to calculate depreciation to determine ACV payments under the RCLD methodology.

34. The only methodology used by Xactimate® to calculate ACV payments for structural damage is the RCLD methodology.

35. Defendant unfairly manipulates Xactimate® to withhold labor from ACV payments.

36. Xactimate® generates its estimating prices from its ongoing fair market pricing research. Its price lists are both temporal (*e.g.*, monthly) and geographic (*e.g.*, city or region).

37. When adjusting property insurance claims with Xactimate®, the property adjuster inputs, among other information, the dimensions of the damaged property, the damaged portion of the damaged property, and other objective information such as the age or condition of the roofing, siding or other damaged building materials.

38. The Xactimate® software program then breaks down each individual necessary step in the repair process into an individual "line item." Each line item has a specific dollar value. The line items are totaled to obtain the RCV values, and then depreciation is applied.

39. Xactimate® can be manipulated to withhold labor from ACV payments by simply checking or unchecking certain boxes concerning depreciation. For example, the below screenshot from the Xactimate® program allows the software used to select or de-select "Depreciate Non-Material," "Depreciate Removal" or "Depreciate Overhead and Profit," all of which are labor items, and all of which will result in the withholding of labor from an ACV payment.



40. In addition, Xactimate® can also be manipulated to withhold labor from ACV payments by failing to include corresponding line items for steep and high roofs. In Xactimate®, when there is property damage to a steep roof pitch or a high roof, Xactimate® uses two corresponding line items for the property repair. One line-item is exclusively for the additional labor costs associated with *removing* the old roofing materials. The second labor line item is exclusively for the additional labor costs to *install* new roofing materials on the steep or high roof pitch.

41. Defendant manipulates Xactimate® to eliminate one of the two corresponding line-items for steep or high roof pitch from the Xactimate® estimates to withhold labor from ACV payments. Oftentimes, Defendant will remove the line-item surreptitiously, *i.e.*, without notifying the policyholder. Other times, Defendant will affirmatively disclose to the policyholders in the Xactimate® estimate that Defendant is withholding this labor under the auspice of "paid when incurred."

42. Specifically, the line-item for the increased labor costs associated with removing damaged roofing materials (*e.g.*, shingle removal) from a steep pitched or high roofing surfaces is typically withheld from Xactimate® estimates prepared by Defendant. When this removal labor line item is removed from the policyholder's estimate, the monetary value as calculated by Xactimate® is also removed, thereby withholding labor from the ACV payments made to Defendant's policyholders.

43. Plaintiff had some amount of labor withheld from her ACV payment due to Defendant's manipulation of Xactimate® as alleged above.

## THE PROPOSED CLASS ACTION DEFINITION

44. Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this lawsuit as a class action on behalf of herself and on behalf of all others similarly situated. This action satisfies the requirements of numerosity, commonality, typicality, and adequacy of representation. Only to the extent it is a requirement under applicable law, the proposed class herein is ascertainable.

45. The proposed labor withholding class that Plaintiff seeks to represent is defined as follows:

> All Liberty Mutual Fire Insurance Company policyholders who made:
>
> (1) a structural damage claim for property located in the States of Alabama, Arizona, Connecticut, Illinois, Kentucky, Maryland, Mississippi, Ohio, Tennessee, Texas, Utah, Virginia, Vermont, Washington, and Wisconsin; and
>
> (2) for which Defendant accepted coverage and then chose to calculate ACV through Xactimate® software; and
>
> (3) which resulted in an actual cash value payment during the class period from which labor was withheld from the policyholder due to the "manipulation of Xactimate® software" as described herein.

46. The proposed class definition, when referencing "labor," includes all labor, including but not limited to, laborer's equipment, removal labor and contractor's overhead and profit.

47. In this pleading, the phrase "manipulation of Xactimate® software" means: (1) affirmative application of the "Depreciate Removal," "Depreciate Non-Material" or "Depreciate

9

O&P" depreciation option settings; and/or (2) failure to pay for both corresponding removal and installation line items for steep or high-pitched roofs when a steep or high-pitched roof line item was identified as payable by Defendant's own adjusters.

48. Included in the putative class definition are policyholders who would have received an actual cash value payment but for the withholding of labor.

49. Members of the putative class as defined all have Article III standing as all such persons and entities, at least initially, received lower claim payments than permitted under the policy. Certain amounts initially withheld as labor may be later repaid to policyholders upon further adjustment of the claim. However, policyholders who have been subsequently repaid for initially withheld labor still have incurred damages, at the least, in the form of the lost "time value" of money during the period of withholding, *i.e.*, interest on the amounts improperly withheld, for the time period of withholding.

50. Excluded from the putative class definition are: (1) all claims arising under policy forms expressly permitting the withholding of labor from ACV payments for the claim at issue within the text of the policy form; (2) any claims in which the initial ACV payment exhausted the applicable limits of insurance; (3) Plaintiff's counsel; (4) Defendant and its affiliates; and (5) the Court to which this case is assigned and its staff.

51. The proposed class period is the maximum limitations period as may be allowed by law.

52. Plaintiff reserves her right to amend, broaden, or narrow the class definition after discovery.

## AMOUNT IN CONTROVERSY

53. Upon information and belief, the amount in controversy with respect to the proposed class exceeds $5,000,000, exclusive of interest and costs.

## CLASS ACTION ALLEGATIONS

54. The members of the proposed class are so numerous that joinder of all members is impracticable. Plaintiff reasonably believes that hundreds or thousands of people geographically dispersed across Alabama, Arizona, Connecticut, Illinois, Kentucky, Maryland, Mississippi, Ohio, Tennessee, Texas, Utah, Virginia, Vermont, Washington, and Wisconsin have been damaged by Defendant's actions. The names and addresses of the members of the proposed class are readily identifiable through records maintained by Defendant or from information readily available to Defendant.

55. The relatively small amounts of damage suffered by most members of the proposed class make filing separate lawsuits by individual members economically impracticable.

56. Defendant has acted on grounds generally applicable to the proposed class in that Defendant routinely withheld labor costs as described herein in its adjustment of property damage claims under its policy of insurance. It is reasonable to expect that Defendant will continue to withhold labor to reduce the amount they pay to its insureds under these policies absent this lawsuit.

57. Common questions of law and fact exist as to all members of the proposed class and predominate over any questions affecting only individual members. The questions of law and fact common to the proposed class include, but are not limited to:

    a. Whether Defendant's policy language allows it to withhold labor costs in its calculation of ACV payments;

    b. Whether Defendant's policy language is ambiguous concerning the withholding of labor costs in calculating ACV payments, and, if so, how Defendant's insurance policies should be interpreted;

    c. Whether Defendant's withholding of labor costs in its calculation of ACV payments breaches the insurance policies;

    d. Whether Defendant has a custom and practice of withholding labor costs in its calculation of ACV payments;

    e. Whether Plaintiff and members of the proposed class have been damaged as a result of Defendant's withholding of labor costs in its calculation of ACV payments;

    f. Whether Plaintiff and members of the proposed class are entitled to a declaration, as well as potential supplemental relief, under the Declaratory Judgment Act; and

    g. Whether Plaintiff and members of the proposed class are entitled to equitable relief in the form of specific performance, unjust enrichment, declaratory relief or restitutionary damages.

58. Plaintiff's claims are typical of the claims of the proposed class members, as they were adversely affected by Defendant's custom and practice concerning the withholding of labor. Further, Plaintiff's claims are typical of the claims of the proposed class members because her claims arise from the same practices and course of conduct (*i.e.*, the manipulation of Xactimate® software to withhold labor) that give rise to the claims of the members of the proposed class and are based on the same factual and legal theories. Plaintiff is not different in any material respect from any other member of the proposed class.

59. Plaintiff and her counsel will fairly and adequately protect the interests of the members of the proposed class. Plaintiff's interests do not conflict with the interests of the proposed class they seek to represent. Plaintiff has retained lawyers who are competent and experienced in class action and insurance litigation. Plaintiff and Plaintiff's counsel have the necessary financial resources to adequately and vigorously litigate this class action, and Plaintiff

and counsel are aware of their fiduciary responsibilities to the members of the proposed class and will diligently discharge those duties by vigorously seeking the maximum possible recovery for the Class while recognizing the risks associated with litigation.

60. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Joining all proposed members of the proposed class in one action is impracticable and prosecuting individual actions is not feasible. The size of the individual claims is likely not large enough to justify filing a separate action for each claim. For many, if not most, members of the proposed class, a class action is the only procedural mechanism that will afford them an opportunity for legal redress and justice. Even if members of the proposed class had the resources to pursue individual litigation, that method would be unduly burdensome to the courts in which such cases would proceed. Individual litigation exacerbates the delay and increases the expense for all parties, as well as the court system. Individual litigation could result in inconsistent adjudications of common issues of law and fact.

61. In contrast, a class action will minimize case management difficulties and provide multiple benefits to the litigating parties, including efficiency, economy of scale, unitary adjudication with consistent results and equal protection of the rights of Plaintiff and members of the proposed class. These benefits would result from the comprehensive and efficient supervision of the litigation by a single court.

62. Questions of law or fact common to Plaintiff and members of the proposed class, including those identified above, predominate over questions affecting only individual members (if any), and a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class action treatment will allow a large number of similarly situated consumers to prosecute their common claims in a single forum, simultaneously,

efficiently, and without the necessary duplication of effort and expense that numerous individuals would require. Further, the monetary amounts due to many individual members of the proposed class are likely to be relatively small, and the burden and expense of individual litigation would make it difficult or impossible for individual members of the proposed class to seek and obtain relief. On the other hand, a class action will serve important public interests by permitting consumers harmed by Defendant's unlawful practices to effectively pursue recovery of the sums owed to them, and by deterring further unlawful conduct. The public interest in protecting the rights of consumers favors disposition of the controversy in the class action form.

63. Class certification is further warranted because Defendant has acted or refused to act on grounds that apply generally to the class, so final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

64. Plaintiff may seek, in the alternative, certification of an issues class.

65. Rule 23(c)(4) provides that an action may be brought or maintained as a class action with respect to particular issues when doing so would materially advance the litigation as a whole.

## COUNT I
## BREACH OF CONTRACT

66. Plaintiff restates and incorporates by reference all preceding allegations.

67. Defendant entered into policies of insurance with Plaintiff and members of the proposed class. These insurance policies govern the relationship between Defendant, Plaintiff, and members of the proposed class, as well as the manner in which claims for covered losses are handled.

68. The policies of insurance between Defendant and Plaintiff and the other members of the proposed class are binding contracts under applicable law and are supported by valid consideration in the form of premium payments in exchange for insurance coverage.

14

69. Defendant drafted the insurance policies at issue, which are essentially identical in all respects material to this litigation.

70. To receive ACV claim payments, Plaintiff complied with all material provisions and performed all duties with regard to the insurance policy.

71. At all times relevant hereto, Defendant's custom and practice has been, and is, to make such payments based upon Defendant's calculation of the ACV through Xactimate® using the RCLD methodology.

72. Defendant breached its contractual duty to pay Plaintiff and members of the proposed class the labor necessary to return damaged property to its *status quo ante* by withholding labor from their respective ACV payments under the RCLD methodology.

73. Defendant's actions in breaching its contractual obligations to Plaintiff and members of the proposed class benefitted and continues to benefit Defendant. Likewise, Defendant's actions damaged and continue to damage Plaintiff and members of the proposed class.

74. Additionally, Defendant breached its contractual duties to Plaintiff by failing and refusing to promptly pay the amounts individually owed to Plaintiff as required by the terms of the policy of insurance. As a result, Plaintiff has been damaged in the amount of the unpaid portion of her claims, including all such amounts that should have been paid by Defendant as a result of the subject loss.

75. Defendant's actions in breaching its contractual obligations, as described herein, are the direct and proximate cause of damages to Plaintiff and members of the proposed class.

76. Given the foregoing, Plaintiff and members of the proposed class are entitled to recover damages sufficient to indemnify them for the unlawfully withheld labor from their ACV payments.

77.     Plaintiff and members of the proposed class seek any and all relief as may be permitted under applicable law to remedy the ongoing breaches of contract.

## COUNT II
## DECLARATORY JUDGMENT AND RELIEF

78.     Plaintiff restates and incorporates by reference all preceding allegations.

79.     This Court is empowered by the Declaratory Judgment Act as codified at 28 U.S.C. § 2201 and Fed. R. Civ. P. 57 to declare the rights and legal relations of parties regardless of whether further relief is or could be claimed.

80.     A party may seek to have insurance contracts, before or after a breach, construed to obtain a declaration of rights, status, and other legal relations thereunder adjudicated.

81.     Plaintiff and members of the class have complied with all relevant conditions precedent in their contracts.

82.     Plaintiff seeks, personally and on behalf of the proposed class, a declaration that Defendant's property insurance contract prohibits the withholding of labor costs as described herein when adjusting losses under the RCLD methodology employed here.

83.     Plaintiff further seeks, personally and on behalf of the proposed class, any and all equitable relief available under the law that the Court deems necessary and proper to the administration of justice, including, but not limited to, identifying and locating policyholders, and notifying the same of the circumstances complained of and the restoration of their rights and remediation of their losses, and preclusion of Defendant from engaging in the conduct described herein, as may be permitted by law.

84.     Plaintiff and members of the proposed class have suffered injuries.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, respectfully requests that this Court:

1. Enter an order certifying this action as a class action, appointing Plaintiff as the representative of the proposed class and appointing Plaintiff's attorneys as counsel for the class;

2. Enter a declaratory judgment, declaring that Defendant's withholding of labor costs as alleged herein is contrary to and breaches the insurance policies issued to Plaintiff and members of the class;

3. Enter a preliminary and permanent injunction and equitable relief against Defendant and its officers, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in each of the policies, practices, customs, and usages complained of herein;

4. Enter an order that Defendant specifically perform and carry out policies, practices, and programs that remediate and eradicate the effects of its past and present practices complained of herein;

5. Award compensatory damages for all sums withheld as labor costs under the policies, plus prejudgment interest on all such sums, to Plaintiff and members of the proposed class;

6. Award compensatory damages to Plaintiff for all amounts to which they are entitled pursuant to the subject insurance policy as a result of Plaintiff's losses;

7. Award costs, expenses, and disbursements incurred herein by Plaintiff and members of the proposed class;

8. Pre-Judgment and Post-Judgment interest; and

9. Grant such further and additional relief as the Court deems necessary and proper.

PLAINTIFF DEMANDS TRIAL BY JURY ON ALL ISSUES TRIABLE BY JURY

Dated: September 12, 2022                    Respectfully submitted,

By: /s/ Jonathan M. Feigenbaum
JONATHAN M. FEIGENBAUM
B.B.O. #546686
Law Offices of Jonathan M. Feigenbaum
184 High Street, Suite 503
Boston, MA 02110
Tel: (617) 357-9700
Fax: (617) 227-2843
jonathan@erisaattorneys.com

***Attorney for Plaintiff and
Putative Class Representative***