**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **JANICE FASSINA, STEVEN EDELEN, and KENNETH BLACK, individually and on behalf of all others similarly situated,** | ) ) ) ) ) |
| **Plaintiffs,** | ) ) |
| **v.** | ) ) |
| | ) **Case No. 22-cv-11466-DJC** |
| **LIBERTY MUTUAL FIRE INSURANCE COMPANY, SAFECO INSURANCE COMPANY OF AMERICA, and LM INSURANCE CORPORATION,** | ) ) ) ) ) |
| **Defendants.** | ) ) |

**MEMORANDUM AND ORDER**

CASPER, J.                                                                           **March 8, 2024**

## I.      Introduction

Plaintiffs Janice Fassina, Steven Edelen and Kenneth Black (collectively, "Plaintiffs"), individually and on behalf of all others similarly situated, filed this lawsuit against Defendants Liberty Mutual Fire Insurance Company ("Liberty), Safeco Insurance Company of America ("Safeco") and LM Insurance Corporation ("LM"), alleging breach of contract (Counts I–II) and seeking declaratory judgment and relief (Count III). D. 4. Defendants have moved to dismiss the first amended complaint ("FAC") for lack of standing under Fed. R. Civ. P. 12(b)(1) or, in the alternative, to strike class allegations under Fed. R. Civ. P. 12(f). D. 20. Defendants have also moved to dismiss the FAC under Fed. R. Civ. P. 12(b)(6). D. 22. Plaintiffs have moved for leave to file a proposed second amended complaint ("PSAC") to add Heather and Joshua Tryon and

Craig and Nancy Dobbs as additional named class representatives and, alternatively, have them intervene under Fed. R. Civ. P. 24.  D. 39.  Plaintiffs have further moved to correct errors in their PSAC to name the proper insurer, Liberty Insurance Corporation ("LIC"), as an additional defendant.  D. 57.[1]

For the reasons stated below, the Court DENIES Defendants' Rule 12(b)(1) motion to dismiss the FAC and DENIES the alternative relief of striking the class allegations.  D. 20.  The Court DENIES Defendants' 12(b)(6) motion to dismiss.  D. 22.  In light of same, the Court DENIES as moot Defendants' motion to stay discovery and class briefing.  D. 35.  The Court ALLOWS Plaintiffs' motion for leave to file the PSAC and DENIES as moot the alternative relief of intervention, D. 39, and ALLOWS Plaintiffs' related motion to correct errors in the PSAC, D. 57.

## II.     Standards of Review

### A.     <u>Rule 12(b)(1) Motion to Dismiss for Lack of Standing</u>

When confronted with a Rule 12(b)(1) motion, "the district court must construe the complaint liberally, treating all well-pleaded facts as true and indulging all reasonable inferences in favor of the plaintiff."  <u>Aversa v. United States</u>, 99 F.3d 1200, 1209–10 (1st Cir. 1996) (citing <u>Murphy v. United States</u>, 45 F.3d 520, 522 (1st Cir. 1995), <u>cert. denied</u>, 515 U.S. 144 (1995)).  The Court  may widen its gaze, however, and look beyond the pleadings to determine subject matter jurisdiction.  <u>Martínez-Rivera v. Commonwealth of Puerto Rico</u>, 812 F.3d 69, 74 (1st Cir. 2016) (citing cases for the proposition that the court can "rely on facts outside of the pleadings" to decide a Rule 12(b)(1) motion).  "[T]he party invoking the jurisdiction of a federal court carries the burden

---

[1] Plaintiffs withdrew the original errata motion, D. 54, <u>see</u> D. 55, so D. 57 is the operative motion.  Accordingly, the Court DENIES D. 54 as withdrawn and the Court addresses D. 57 herein.

of proving its existence." Murphy, 45 F.3d at 522 (quoting Taber Partners, I v. Merit Builders, Inc., 987 F.2d 57, 60 (1st Cir. 1993)).

Standing is a jurisdictional issue, see P.R. Tel. Co. v. T-Mobile P.R. LLC, 678 F.3d 49, 57 (1st Cir. 2012), and, accordingly, challenges to standing are properly considered under Rule 12(b)(1). See Kolancian v. Snowden, 532 F. Supp. 2d 260, 261 (D. Mass. 2008).

**B.     Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim**

On a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must determine if the facts alleged "plausibly narrate a claim for relief." Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012) (citation omitted). Reading the complaint "as a whole," the Court must conduct a two-step, context-specific inquiry. García-Catalán v. United States, 734 F.3d 100, 103 (1st Cir. 2013). First, the Court must perform a close reading of the claim to distinguish the factual allegations from the conclusory legal allegations contained therein. Id. Factual allegations must be accepted as true, while conclusory legal conclusions are not entitled credit. Id. Second, the Court must determine whether the factual allegations present a "reasonable inference that the defendant is liable for the misconduct alleged." Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011) (citation omitted). In sum, the complaint must provide sufficient factual allegations for the Court to find the claim "plausible on its face." García-Catalán, 734 F.3d at 103 (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

**C.     Rule 15(a)(2) Motion for Leave to Amend**

Under Fed. R. Civ. P. 15(a)(2), "leave to amend is to be 'freely give[n] when justice so requires' . . . unless the amendment 'would be futile, or reward, *inter alia*, undue or intended delay.'" Steir v. Girl Scouts of the USA, 383 F.3d 7, 12 (1st Cir. 2004) (first quoting Fed. R. Civ.

P. 15(a)(2); and then quoting <u>Resol. Tr. Corp. v. Gold</u>, 30 F.3d 251, 253 (1st Cir. 1994)).   Rule 15(a)'s "liberal amendment policy . . . does not mean that leave will be granted in all cases." <u>Acosta-Mestre v. Hilton Int'l of P.R.</u>, 156 F.3d 49, 51 (1st Cir. 1998) (internal quotation marks and citation omitted).   "[I]f the proposed amendment would be futile because, as thus amended, the complaint still fails to state a claim, the district court acts within its discretion in denying the motion to amend."   <u>Bos. & Me. Corp. v. Town of Hampton</u>, 987 F.2d 855, 868 (1st Cir. 1993), <u>overruled on other grounds by</u> <u>Educadores, Puertorriqueños en Acción v. Hernández</u>, 377 F.3d 61 (1st Cir. 2004).

## III.   Factual Background

The following facts are alleged in Plaintiffs' FAC, D. 4, and are taken as true for purposes of considering Defendants' motions to dismiss.

Fassina is a citizen and resident of Alabama and owns a residence in Fultondale, Alabama. <u>Id.</u> ¶ 9.   At all relevant times, Liberty insured Fassina's residence for property damage.   <u>Id.</u> ¶¶ 21–23.   On or about January 25, 2021, a tornado damaged the residence, resulting in accidental direct physical loss.   <u>Id.</u> ¶ 24.   Fassina notified Liberty of the damage and submitted a claim against her insurance policy.   <u>Id.</u> ¶ 26.   Liberty determined that the loss was covered.   <u>Id.</u> ¶ 27.

Edelen is a citizen and resident of Maryland and owns a residence in Faulkner, Maryland. <u>Id.</u> ¶ 10.   At all relevant times, Safeco insured Edelen's residence for property damage.   <u>Id.</u> ¶¶ 32–33.   On or about September 2, 2019, Edelen's residence was damaged.   <u>Id.</u> ¶ 34.   Edelen notified Safeco of the damage and submitted a claim against his insurance policy.   <u>Id.</u> ¶ 36.   Safeco determined that the loss was covered.   <u>Id.</u> ¶ 37.   Black is also a citizen and resident of Maryland and owns a residence in Accokeek, Maryland.   <u>Id.</u> ¶ 11.   At all relevant times, LM insured Black's residence for property damage.   <u>Id.</u> ¶¶ 42–43.   On or about May 26, 2021, Black's residence was

damaged.  Id. ¶ 44.  Black notified LM of the damage and submitted a claim against his insurance policy.  Id. ¶ 46.  LM determined that the loss was covered.  Id. ¶ 47.

As alleged, Defendants were required to pay the actual cash value ("ACV") of the property damaged as part of the Plaintiffs' losses, as opposed to the replacement cost value ("RCV") of same.  Id. ¶ 1.  Whereas ACV payments are made prospectively, i.e., prior to the policyholder undertaking repairs to damaged buildings and structures, RCV payments are made retrospectively, after repairs have been completed.  Id. ¶ 2.  Plaintiffs assert that Defendants calculate ACV under the "replacement cost less depreciation" ("RCLD") methodology, allowing Defendants to calculate the full amount of labor and materials necessary to repair or replace the property and to then deduct from that amount depreciation.  See id. ¶ 3.

To calculate Plaintiffs' ACV payments, Defendants used Xactimate®, a computer software program designed to assist insurers with RCLD calculations.  Id. ¶¶ 53–55.  Xactimate® generates price estimates based on a series of inputs, including the dimensions of the damaged property, the damaged portion of the damaged property, and other objective criteria like the age or condition of the roofing, siding, or other damaged building materials.  Id. ¶¶ 60–61.  Xactimate® breaks down each step of the repair process into separate "line items" and allows the insurance adjuster to check or uncheck boxes associated with these line items to account for, and ultimately deduct, depreciation.  Id. ¶¶ 62–63.  As alleged, some of these checkboxes, such as "Depreciate Material," "Depreciate Removal," and "Depreciate Overhead and Profit," are "labor items," i.e., costs associated with any labor necessary to repair the damaged property.  Id. ¶ 63.  There are also two checkboxes that correspond with labor items for steep and high roofs, one for labor costs associated with the removal of old roofing materials and the other associated with installation costs.  Id. ¶ 64.

Plaintiffs allege that Defendants used these checkboxes to withhold labor costs from their ACV payments.  Id. ¶¶ 65–67.  This so-called "labor depreciation" results in smaller ACV payments.  See id. ¶¶ 56, 67.  Plaintiffs' insurance policies do not contain a labor depreciation permissive form, i.e., provisions expressly permitting labor depreciation.  Id. ¶¶ 29, 39, 49.  Plaintiffs assert Defendants' labor depreciation practices have resulted in the underpayment of ACV claims (and therefore breaches of contracts) affecting the residents of seventeen states, including their homes states of Alabama and Maryland, as well as fifteen other states:  Arizona, California, Connecticut, Illinois, Kentucky, Mississippi, Missouri, Ohio, Tennessee, Texas, Utah, Vermont, Virginia, Washington and Wisconsin.  Id. ¶ 78.

## IV.    Procedural History

On September 12, 2022, Fassina, individually and on behalf of all others similarly situated, filed a complaint against Liberty.  D. 1.  On November 18, 2022, Fassina and the other Plaintiffs, individually and on behalf of all others similarly situated, filed the operative FAC against all Defendants.  D. 4.  Defendants then moved to dismiss the FAC as to all out-of-state claims for lack of standing under Fed. R. Civ. P. 12(b)(1) or, in the alternative, to strike class allegations under Rule 12(f), D. 20, and also moved to dismiss the FAC under Rule 12(b)(6), D. 22.  Subsequently, Defendants moved to stay discovery and class briefing pending resolution of the motions to dismiss.  D. 35.  Plaintiffs now have moved for leave to file the PSAC to add Plaintiffs Heather and Joshua Tryon and Craig and Nancy Dobbs or, alternatively, have them intervene under Rule 24.  D. 39.[2]  This Court now has heard the parties on the pending motions and took the matters under advisement.  D. 70.

_____

[2] This case was initially assigned to another session of this Court, where oral argument was held on October 11, 2023.  D. 63.  On December 15, 2023, the matter was re-assigned to this

V.      **Discussion**

A.      <u>**Defendants' Rule 12(b)(1) Motion to Dismiss for Lack of Standing**</u>

Defendants argue, under Rule 12(b)(1), that the FAC should be dismissed as to all claims arising in the fifteen states where Plaintiffs do not reside and were not injured.  D. 21 at 11–19. Defendants contend that Plaintiffs lack standing as to these claims under Article III of the United States Constitution.  <u>Id.</u>  Plaintiffs maintain that all elements of Article III standing have been met, D. 34 at 8–9, and argue that federal circuit courts, including the First Circuit, have held that multistate class claims are not precluded by Article III of the United States Constitution, that resolution of the predominant legal issue will be the same in each state and that the relevant state laws are substantively the same.  <u>Id.</u> at 9–20.

"The federal courts are required to determine whether Article III jurisdiction exists prior to proceeding to the merits of the case."  <u>United Seniors Ass'n, Inc. v. Philip Morris USA</u>, 500 F.3d 19, 23 (1st Cir. 2007).  Under Article III, "[a]n actual case or controversy exists when the party seeking to invoke the court's jurisdiction (normally, the plaintiff) has a 'personal stake in the outcome' of the claim asserted."  <u>Pagán v. Calderón</u>, 448 F.3d 16, 27 (1st Cir. 2006) (quoting <u>Baker v. Carr</u>, 369 U.S. 186, 204 (1962)).  To satisfy the personal stake requirement, three elements must be met:  "[1] a would-be plaintiff must demonstrate a concrete and particularized injury in fact, [2] a causal connection that permits tracing the claimed injury to the defendant's actions, and [3] a likelihood that prevailing in the action will afford some redress for the injury."  <u>Me. People's All. & Nat. Res. Def. Council v. Mallinckrodt, Inc.</u>, 471 F.3d 277, 283 (1st Cir. 2006) (citing <u>Lujan</u>

---

session.  D. 64.  This Court set a date for oral argument on December 19, 2023, D. 65, 69, and held that hearing on January 31, 2024.  D. 70.

v. Defs. of Wildlife, 504 U.S. 555, 560–61 (1992)); see Katz v. Pershing, LLC, 672 F.3d 64, 71–72 (1st Cir. 2012).

"That a suit may be a class action . . . adds nothing to the question of standing, for even named plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong.'" Spokeo, Inc. v. Robins, 578 U.S. 330, 338 n.6 (2016) (quoting Simon v. E. Ky. Welfare Rts. Org., 426 U.S. 26, 40 n.20 (1976)). "However, the question whether allegations of personal injury are sufficient to satisfy the constitutional requirements 'is not so clear cut with respect to putative class representatives in class action disputes.'" In re Lantus Direct Purchaser Antitrust Litig., 512 F. Supp. 3d 106, 120 (D. Mass. 2020) (quoting In re Nexium (Esomeprazole) Antitrust Litig., 968 F. Supp. 2d 367, 403–04 (D. Mass. 2013)).

In In re Asacol Antitrust Litigation, 907 F.3d 42, 48 (1st Cir. 2018), the First Circuit clarified how putative class representatives may establish standing to bring claims on behalf of class members whose claims arise under the laws of states within which no named plaintiff resides or suffers injury. There, the named plaintiffs filed a class action alleging violations of consumer protection and antitrust laws of twenty-five states and the District of Columbia, id. at 44–45; they did not reside in twenty-two of the states, but other members of the proposed class did. Id. at 48.

The First Circuit first explained that the analysis of Article III standing cannot be collapsed into Rule 23 considerations. Id. The court noted that it has trained its "Article III focus in class actions on 'the incentives of the named plaintiffs to adequately litigate issues of importance to them.'" Id. at 48–49 (quoting Plumbers' Union Loc. No. 12 Pension Fund v. Nomura Asset Acceptance Corp., 632 F.3d 762, 770 (1st Cir. 2011)). "This focus is in many respects simply an application to aggregate litigation of the basic Article III requirement that a plaintiff possess 'such

a personal stake in the outcome of the controversy as to assure . . . concrete adverseness.'" Id. (quoting Baker, 369 U.S. at 204).  The First Circuit noted that the "pertinent question" is not whether there are differences between the claims of the class members and the claims of the class representatives, but instead whether "the differences that do exist" are "the type that leave the class representatives with an insufficient personal stake in the adjudication of the class members' claims." Id. at 49.  Accordingly, the Court must examine whether "the claims of the named plaintiffs parallel those of the putative class members in the sense that, assuming a proper class is certified, success on the claim under one state's law will more or less dictate success under another state's law." Id.

Applying these principles, the First Circuit held that the class representatives had Article III standing to assert out-of-state claims.  Id.  The First Circuit emphasized that the parties agreed that the plaintiffs' liability theories as to monopolization were limited to a construction of state antitrust laws that paralleled the federal Sherman Antitrust Act and that, "[u]nder those parallel laws," all plaintiffs had a "substantial and shared interest in proving that the higher price was the result of unlawful monopolizing conduct that is redressable by an award of damages." Id.  Because the relevant laws were "materially the same," the First Circuit concluded that any minor differences had "no relevant bearing on the personal stake of the named plaintiffs in litigating the case to secure such judgments." Id.

Here, the parties dispute whether the laws of Alabama and Maryland, where the class representatives' claims arose, and the laws of the fifteen states where their claims did not arise—Arizona, California, Connecticut, Illinois, Kentucky, Mississippi, Missouri, Ohio, Tennessee, Texas, Utah, Vermont, Virginia, Washington and Wisconsin—are sufficiently parallel to establish Article III standing.  Plaintiffs assert that under the laws of Alabama, Arizona, Illinois, Kentucky,

Mississippi, Missouri, Ohio, Tennessee and Texas, labor depreciation is a breach of contract where there is no provision in an insurance policy that expressly permits the practice when calculating ACV payments pursuant to the RCLD methodology.  D. 34 at 10.  Plaintiffs also note that California, Connecticut, Vermont and Washington prohibit labor depreciation pursuant to statutory or regulatory law and point to public statements in which Virginia's Bureau of Insurance takes the position that labor is not an appreciable item.  Id. at 10–11.  Plaintiffs appear to concede that Maryland, Utah and Wisconsin have yet to address the issue but insist that they will advance similar legal arguments on behalf of policyholders in these states.  Id.

Defendants acknowledge that there is support for Plaintiffs' assertion that labor depreciation may support a breach of contract claim under the laws of Arizona, California, Illinois, Kentucky, Mississippi, Ohio, Tennessee and Washington.  D. 37 at 4–5.  Consistent with Plaintiffs' position, Defendants add that Utah, Wisconsin and Edelen and Black's home state of Maryland do not prohibit labor depreciation.  Id. at 4.  Defendants, however, disagree with Plaintiffs' characterization of the laws of Connecticut, Vermont and Virginia.  Id. at 4–5. Defendants also assert that there are "conflicting court opinions" in Missouri, Texas and Fassina's home state of Alabama.  Id. at 5.

Given that there exists some legal authority prohibiting labor depreciation under the laws of Arizona, California, Illinois, Kentucky, Mississippi, Ohio, Tennessee and Washington, and the proffered support for this position, Plaintiffs have demonstrated that their interests in proving that Defendants impermissibly depreciated labor costs from ACV payments are sufficiently aligned with the interests of the class members from those states to establish Article III standing.  See Walker v. Auto-Owners Ins. Co., 517 P.3d 617, 623 (Ariz. 2022) (concluding that "if a policy adopts the RCLD methodology for determining actual cash value, . . . the insurer is precluded from

depreciating labor when determining the actual cash value of the covered loss"); Cal. Code. Regs tit. 10, § 2695.9(f) (2023) (providing that "the expense of labor necessary to repair, rebuild or replace covered property is not a component of physical depreciation and shall not be subject to depreciation"); Sproull v. State Farm Fire & Cas. Co., 184 N.E.3d 203, 221 (Ill. 2021) (affirming the ruling that "depreciation may not be applied to the intangible labor component"); Hicks v. State Farm Fire & Cas. Co., 751 F. App'x 703, 708–10 (6th Cir. 2018) (holding that, under Kentucky law, an insurance policy that did not define ACV depreciation to include labor was ambiguous as to same and, thus, had to be construed in the insured's favor); Mitchell v. State Farm Fire & Cas. Co., 954 F.3d 700, 705–07 (5th Cir. 2020) (concluding that, under Mississippi law, "Actual Cash Value" was ambiguous as to labor depreciation and, thus, ambiguity had to be resolved in favor of the insured); Perry v. Allstate Indem. Co., 953 F.3d 417, 423 (6th Cir. 2020) (holding "as a matter of [Ohio] law that it was improper for Allstate to depreciate labor costs to arrive at its net payment to Perry for the damage of her home"); Lammert v. Auto-Owners (Mut.) Ins. Co., 572 S.W.3d 170, 179 (Tenn. 2019) (holding that "labor may not be depreciated when the insurance company calculates the actual cash value of a property using the replacement cost less depreciation method"); Lains v. Am. Family Mut. Ins. Co., No. C14-1982-JCC, 2016 WL 4533075, at *3 (W.D. Wash. Feb. 9, 2016) (concluding that, under Washington law, "depreciation does not include labor costs" and that "Defendant improperly depreciated labor costs when determining the actual cash value of Plaintiff's home").

As to Connecticut, Maryland, Utah, Vermont, Virginia and Wisconsin, the parties seem to agree, at least, that courts have not conclusively addressed whether depreciation of labor costs is unambiguously permitted where there is no provision in an insurance policy that expressly permits the practice. See D. 34 at 10–11; D. 37 at 4–5. Even if courts in these states have not considered

this narrow issue, however, Defendants cannot deny that "breach of contract" is a legal claim in each state and that the elements of these "parallel laws" are "materially the same."  See Asacol, 907 F.3d at 49; Meyers v. Livingston, Adler, Pulda, Meiklejohn & Kelly, P.C., 87 A.3d 534, 540 (Conn. 2014) (noting that the "elements of a breach of contract claim are the formation of an agreement, performance by one party, breach of the agreement by the other party, and damages"); Taylor v. NationsBank, N.A., 776 A.2d 645, 651 (Md. 2001) (holding that "[t]o prevail in an action for breach of contract, a plaintiff must prove that the defendant owed the plaintiff a contractual obligation and that the defendant breached that obligation")[3]; Am. West Bank Members, L.C. v. State, 342 P.3d 224, 230–31 (Utah 2014) (explaining that "[t]he elements of a prima facie case for breach of contract are (1) a contract, (2) performance by the party seeking recovery, (3) breach of the contract by the other party, and (4) damages"); Ianelli v. U.S. Bank, 996 A.2d 722, 728 (Vt. 2010) (reasoning that a breach of contract requires proof of an agreement, a breach of that agreement and damages); Navar, Inc. v. Fed. Bus. Council, 784 S.E.2d 296, 299 (Va. 2016) (noting that "the elements of a breach of contract action are (1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation"); Pagoudis v. Keidl, 988 N.W.2d 606, 612 (Wis. 2023) (recognizing that "[t]he elements of any breach of contract claim are (1) the existence of a contract between the plaintiff and the defendant; (2) breach of that contract; and (3) damages").

---

[3] The Court of Appeals of Maryland has noted that "[i]t is not necessary that the plaintiff prove damages resulting from the breach, for it is well settled that where a breach of contract occurs, one may recover nominal damages even though he has failed to prove actual damages." Taylor, 776 A.2d at 651.  This deviation does not undermine the inclusion of class members from Maryland on Article III grounds, however, because "the named plaintiffs certainly have a substantial stake in proving" the remaining, parallel elements of their breach of contract claims, see Asacol, 907 F.3d at 50, which would sustain a breach of contract claim in Maryland.

These states, Connecticut, Maryland, Utah, Vermont, Virginia and Wisconsin, also recognize the general principle that ambiguities in an insurance policy should be construed against the insurer.  See Conn. Ins. Guar. Ass'n v. Fontaine, 900 A.2d 18, 24 (Conn. 2006) (noting that "our interpretation of ambiguous policy language in favor of coverage under the doctrine of contra proferentem has become near axiomatic in insurance coverage disputes"); Sullins v. Allstate Ins. Co., 667 A.2d 617, 619 (Md. 1995) (recognizing that "if no extrinsic evidence or parol evidence is introduced, or if the ambiguity remains after consideration of the extrinsic or parol evidence . . . , it will be construed against the insurer as the drafter of the policy")[4]; Utah Farm Bureau Ins. Co. v. Crook, 980 P.2d 685, 687 (Utah 1999) (holding that "[a]mbiguities are construed against the drafter—the insurance company—and in favor of coverage"); Chamberlain v. Metro Prop. & Cas. Ins. Co., 756 A.2d 1246, 1248 (Vt. 2000) (noting that "[a]ny ambiguity in an insurance contract must be construed in favor of the insured"); Va. Farm Bureau Mut. Ins. Co. v. Williams, 677 S.E.2d 299, 302 (Va. 2009) (holding that "if disputed policy language is ambiguous and can be understood to have more than one meaning, we construe the language in favor of coverage and against the insurer"); Hirschhorn v. Auto-Owners Ins. Co., 809 N.W.2d 529, 535 (Wis. 2012) (explaining that "ambiguities are construed against the insurer, the drafter of the policy").[5]  Given

---

[4] Although "Maryland does not follow the rule, adopted in many jurisdictions, that an insurance policy is to be construed most strongly against the insurer," the Court of Appeals of Maryland has emphasized that, absent extrinsic evidence resolving the ambiguity, such ambiguity is resolved against the insurer as "the drafter" of the policy, Sullins, 667 A.2d at 619; here, Plaintiffs allege that "Defendants drafted the insurance policies at issue," so this distinction is immaterial here.  See D. 4 ¶ 93.

[5] Defendants argue that the laws of a majority of the states in which the putative class members reside are materially different, citing federal district courts in other circuits that have concluded same. D. 21 at 14–19 (citing Brown v. Auto-Owners Ins. Co., No. 1:21-cv-02597, 2022 WL 2442548, at *1 (N.D. Ill. June 1, 2022); Rivers of Life Int'l Ministries v. GuideOne Ins. Co., No. 1:22-cv-01114-STA-jay, 2022 WL 17261845, at *4 (W.D. Tenn. Nov. 18, 2022)).  However, in Brown, the court did not analyze the relevant state laws through the First Circuit's framework set forth in Asacol, which is binding on this Court.  Although the court in Rivers of Life

this uniformity in the law in Connecticut, Maryland, Utah, Vermont, Virginia and Wisconsin, the inclusion of plaintiffs from these states in the same putative class does not destroy Article III standing.  See Asacol, 907 F.3d at 48–49.

As to the remaining states of Alabama, Missouri and Texas, Defendants assert that there are "conflicting court opinions" on the question whether labor depreciation is unambiguously allowed where an insurance policy does not expressly permit same for the calculation of ACV payments under the RCLD methodology.  See D. 37 at 5.  In Alabama, federal district courts have taken different approaches to this issue.  Compare Ware v. Metropolitan Prop. & Cas. Ins. Co., 220 F. Supp. 3d 1288, 1291 (M.D. Ala. 2016) (holding that the text of an insurance policy, which deducted "physical deterioration and depreciation including obsolescence" from ACV payments, "clear[ly] and unambiguous[ly]" allowed labor depreciation), with Arnold v. State Farm Fire & Cas. Co., 268 F. Supp. 3d 1297, 1304, 1312 (2017) (holding that an insurance policy did not unambiguously allow for labor depreciation where the term ACV was not defined).  Federal district courts in Texas have also issued decisions seemingly at odds with one another.  Compare Tolar v. Allstate Tex. Lloyd's Co., 722 F. Supp. 2d 825, 831–32 (N.D. Tex. 2011) (suggesting that labor costs may be depreciable from ACV payments), with Sims v. Allstate Fire & Cas. Ins. Co., 650 F. Supp. 3d 540, 546 (W.D. Tex. 2023) (holding that "the term 'actual cash value' in the subject Policies does not include depreciation of anticipated labor costs").

---

International Ministries cited Asacol, the decision does not include an in-depth multistate analysis explaining why the relevant laws are too materially different for plaintiffs to establish Article III standing and instead relied upon Brown to support that proposition.  Defendants' citation to Hospital Authority of Metropolitan Government of Nashville and Davidson County, Tennessee v. Momenta Pharmaceuticals, Inc., 333 F.R.D. 390, 414 (M.D. Tenn. 2019), see D. 21 at 14, 16–17, 19, is similarly unavailing; there, the Court applied Asacol and held that plaintiffs had standing to bring claims given similarities in the state statutes underlying their claims.

Setting aside these conflicting opinions among federal courts, however, Defendants do not identify Alabama or Texas state appellate authorities holding that labor depreciation is unambiguously allowed where an insurance policy does not expressly permit the practice.  At base, plaintiffs who assert breach of contract claims in these states must prove the same elements as parallel claims in other states.  See Hooper v. Columbus Reg'l Healthcare Sys., Inc., 956 So.2d 1135, 1139 (Ala. 2006) (describing the elements of a breach of contract claims as "(1) the existence of a valid contract binding the parties in the action, (2) his own performance under the contract, (3) the defendant's nonperformance, and (4) damages"); USAA Tex. Lloyds Co. v. Menchaca, 545 S.W.3d 479, 501 n.21 (Tex. 2018) (noting that "[a] plaintiff asserting a breach-of-contract claim must prove (1) the existence of a valid contract; (2) the plaintiff performed or tendered performance as the contract required; (3) the defendant breached the contract by failing to perform or tender performance as the contract required; and (4) the plaintiff sustained damages as a result of the breach").  Alabama and Texas also recognize the principle that insurance contracts must be read liberally in favor of the insured.  See Cincinnati Ins. Co. v. Lee Anesthesia, P.C., 641 So.2d 247, 249 (Ala. 1994) (emphasizing that an insurance "contract shall be construed liberally in favor of the insured and strictly against the insurer"); Providence Wash. Ins. Co. v. Proffitt, 239 S.W.2d 379, 381 (Tex. 1951) (explaining that "[i]t is a settled rule in [Texas] that policies of insurance will be interpreted and construed liberally in favor of the insured and strictly against the insurer").  Absent state appellate authorities or other state law establishing that labor depreciation is unambiguously allowed under circumstances similar to those alleged here, the Court is not inclined to construe "depreciation" to unambiguously include labor costs, especially where there are no provisions in the policies permitting same.  Such an approach would belie the principle, recognized in Alabama and Texas, that an insurance policy must be construed liberally in favor of the insured.

Finally, as to Missouri, Defendants assert that federal authority is in conflict with state authority as to the issue of labor depreciation and point to In re State Farm Fire and Casualty Company (LaBrier), 872 F.3d 567 (8th Cir. 2017). There, the Eighth Circuit held that a district court erred in denying a motion to dismiss because it did not address "whether depreciating what a contractor will charge to replace the partial loss is a reasonable method of estimating the difference in value of the property immediately before and immediately after the loss." Id. at 576 (internal quotation marks and citation omitted). This decision, however, precedes the Missouri Court of Appeals' decision in Franklin v. Lexington Insurance Company, 652 S.W.3d 286, 303 (Mo. Ct. App. 2022), rehearing and transfer denied (July 28, 2022), transfer denied (Oct. 4, 2022), where the court held "[i]n the absence of an express policy provision that allows for it, labor does not fall within that which can be depreciated when an insured is entitled to an ACV payment." In light of the decision in Franklin, which the Eighth Circuit did not have the benefit of considering in LaBrier, there is a sufficient basis under Missouri law for Plaintiffs to have Article III standing as to individuals with claims arising in that state.

Because the laws of Alabama and Maryland, where the class representatives' claims arose, are sufficiently parallel to the laws of fifteen states where their claims did not arise—Arizona, California, Connecticut, Illinois, Kentucky, Mississippi, Missouri, Ohio, Tennessee, Texas, Utah, Vermont, Virginia, Washington and Wisconsin—Plaintiffs have met their burden in demonstrating standing. Accordingly, Defendants' Rule 12(b)(1) motion is denied.[6]

---

[6] Defendants argue, alternatively, that the Court should strike Plaintiffs' class allegations as to the state claims of the class members other than those of the named plaintiffs under Rule 12(f). D. 21 at 19–22. "Motions to strike under Rule 12(f) are generally disfavored," U.S. Sec. & Exch. Comm'n v. Nothern, 400 F. Supp. 2d 362, 364 (D. Mass. 2005), and rarely granted absent a showing of prejudice to the moving party. See Ross–Simons of Warwick, Inc. v. Baccarat, Inc., 182 F.R.D. 386, 398 (D.R.I. 1998). A court should "'delet[e] the complaint's class allegations' when 'it is obvious from the pleadings that the proceeding cannot possibly move forward on a

### B.      Defendants' Rule 12(b)(6) Motion to Dismiss

Defendants also move to dismiss the named Plaintiffs' FAC under Rule 12(b)(6) for failure to state a claim.  D. 22.  First, Defendants argue that Fassina has not plausibly alleged a breach of contract claim because labor depreciation is permitted under her insurance policy and under Alabama law.  D. 23 at 8–11.  Second, Defendants argue that Black and Edelen's claims fail because labor depreciation is permitted under Maryland law and the text of their respective insurance policies.  Id. at 12–21.[7]

#### 1.      Fassina's Breach of Contract Claims Under Alabama Law

To prove a breach of contract under Alabama law, the claimant must show "(1) the existence of a valid contract binding the parties in the action, (2) [claimant's] own performance under the contract, (3) the defendant's nonperformance, and (4) damages."  S. Med. Health Sys., Inc. v. Vaughn, 669 So.2d 98, 99 (Ala. 1995).

Defendants argue that Fassina cannot show Liberty's nonperformance or damages because her insurance policy defines ACV as the "amount it would cost to repair or replace covered property, at the time of loss or damage, with material of like kind and quality, subject to a deduction for depreciation."  D. 23-1 at 33.  According to Defendants, when a policy defines ACV according to the RCLD methodology (as Fassina's policy does), labor costs may be depreciated under

---

classwide basis.'"  Camey v. Force Factor, LLC, No. CV 14-14717-RWZ, 2016 WL 10998440, at *2 (D. Mass. May 16, 2016) (quoting Manning v. Bos. Med. Ctr. Corp., 725 F.3d 34, 59 (1st Cir. 2013)).  However, in light of the Court's ruling that Plaintiffs' claims may proceed on a classwide basis, and the commonality of breach of contract claims as discussed above, the Court denies Defendants' request to strike Plaintiffs' class allegations.

[7] The Court may consider the proffered copies of the insurance policies on a Rule 12(b)(6) motion as "documents the authenticity of which are not disputed by the parties" and "documents sufficiently referred to" in the FAC.  See Erban v. Tufts Med. Ctr. Physicians Org., Inc., 652 F. Supp. 3d 149, 156 (D. Mass. Jan. 23, 2023) (internal quotation marks omitted).

Alabama law.  D. 23 at 9–11.  Plaintiffs reject Defendants' characterization of Alabama law and insist that Fassina's policy does not unambiguously allow labor depreciation.  D. 33 at 10–13.

"The issue whether a contract is ambiguous or unambiguous is a question of law for the court to decide."  Crook v. Allstate Indem. Co., 314 So.3d 1188, 1193 (Ala. 2020) (internal quotation marks and citation omitted).  "When analyzing an insurance policy, a court gives words used in the policy their common, every day meaning and interprets them as a reasonable person in the insured's position would have understood them."  Id. (internal quotation marks and citation omitted).  "The court must enforce the insurance policy as written if the terms are unambiguous."  Safeway Ins. Co. v. Herrera, 912 So.2d 1140, 1143 (Ala. 2005) (citations omitted).  "If a word or phrase is not defined in the policy, then the court should construe the word or phrase according to the meaning a person of ordinary intelligence would reasonably give it."  Id. (citation omitted).  "A term is ambiguous only if, applying the ordinary meaning, one would conclude that the provision containing the term is reasonably susceptible to two or more constructions."  Id. at 1144 (internal quotation marks and citation omitted).  "To the extent the language of an insurance policy provision is ambiguous, all ambiguities must be resolved against the insurance company."  Id. at 1143 (citation omitted); see Cincinnati Ins. Co., 641 So.2d at 249.

Defendants rest their argument as to Fassina's claims on Ware, 220 F. Supp. 3d at 1288. In that case, a federal district court applying Alabama law granted a motion to dismiss where an insurance policy defined ACV as "the amount which it would cost to repair or replace covered property with material of like kind and quality, less allowance for physical deterioration and depreciation including obsolescence."  Id. at 1290.  The court held that the text of the policy was "clear and unambiguous" and that depreciation could be "deducted based on the entire cost of repair, including repair materials and labor."  Id. at 1291.  Plaintiffs, meanwhile, point to the

decision of another Alabama federal district court in <u>Arnold</u>, 268 F. Supp. 3d at 1297, insisting that <u>Arnold</u> (and not <u>Ware</u>) is the better authority on the question of labor depreciation.  D. 33 at 10.  There, the court held that an insurance policy did not unambiguously allow for labor depreciation.  <u>Arnold</u>, 268 F. Supp. 3d at 1311.

One way to reconcile the decisions in <u>Ware</u> (where ACV was defined) and <u>Arnold</u> (where ACV was undefined) would be to focus on whether the insurance policy at issue defines the term, "actual cash value."  <u>See</u> <u>Arnold</u>, 268 F. Supp. 3d at 1309 (emphasizing that "[t]he only question presented by defendant's motion is whether, under Alabama law, the undefined term 'actual cash value' unambiguously includes depreciation of labor costs").  Moreover, whether a policy defines ACV may itself present a question of law as an insurer's definition of ACV may itself contain ambiguous terms, such as "depreciation," which may under the circumstances require resolution in the insured's favor under Alabama law.  <u>See</u> <u>Cincinnati Ins. Co.</u>, 641 So.2d at 249.

Here, Fassina's insurance policy defines ACV as "the amount it would cost to repair or replace covered property, at the time of loss or damage, with material of like and kind quality, subject to a deduction for depreciation."  D. 23-1 at 33.  Even assuming *arguendo* that this language reasonably could be construed as encompassing depreciation for labor costs, Fassina could reasonably construe the word "depreciation" to reach only physical deterioration.  <u>See</u> <u>Arnold</u>, 268 F. Supp. 3d at 1312 (explaining that "a reasonable insured could reasonably understand that labor does not depreciate").  Construing this ambiguity in Fassina's favor, as is required under Alabama law, the Court concludes that Fassina has plausibly alleged a breach of contract.

2.    *Black and Edelen's Breach of Contract Claims Under Maryland Law*

Defendants argue that Black and Edelen's breach of contract claims should be dismissed because, under Maryland law, labor depreciation is permitted to determine ACV. D. 23 at 12. For support, Defendants point to Schreiber v. Pacific Coast Fire Insurance Company, 75 A.2d 108 (Md. 1950), where the court purportedly adopted the "broad evidence rule." In that case, the court considered whether an appraiser had properly estimated the actual cash value of a building by determining the cost of reproduction and then subtracting depreciation. Id. at 111. The court remarked that "the best considered cases hold that cost of reproduction is not the measure of 'actual cash value,' but is very important evidence of value.'" Id.

The Court does not agree that Schreiber, which dealt with the appraisal of a dwelling, stands for a principle so broad as to permit labor depreciation when calculating ACV payments where, as alleged, Defendants used the RCLD methodology and where the terms of Edelen and Black's policies suggested same. See D. 4 ¶ 3 (alleging that "Defendants calculate ACV under the [RCLD] methodology"); see also D. 23-1 at 75 (Black's policy stating that RCV is paid "without deduction for depreciation," suggesting depreciation deduction applies only to ACV, consistent with RCLD methodology); D. 23-1 at 141 (Edelen's policy defining ACV as the "cost of materials and labor . . . less reasonable deduction for wear and tear, deterioration and obsolescence").

Like Fassina, Black and Edelen also assert breach of contract claims. "To prevail in an action for breach of contract, a plaintiff must prove that the defendant owed the plaintiff a contractual obligation and that the defendant breached that obligation." Taylor v. NationsBank, N.A., 776 A.2d 645, 651 (Md. 2001). "If the language in an insurance policy suggests more than one meaning to a reasonably prudent layperson, it is ambiguous." Sullins, 667 A.2d at 619 (citations omitted). Under Maryland law, extrinsic evidence or parol evidence may resolve an

ambiguity; however, "if no extrinsic evidence or parol evidence is introduced, . . . it will be construed against the insurer as the drafter of the policy." <u>Id.</u> (internal quotation marks and citations omitted).

Black's insurance policy with LM does not define ACV or replacement cost.  D. 23-1 at 75.  Absent a definition, the Court is not convinced that a "reasonably prudent layperson" would be able to discern that ACV unambiguously encompasses the depreciation of labor costs.  <u>See</u> <u>Sullins,</u> 667 A.2d at 619.  Defendants' primary authority for arguing that there is no ambiguity is <u>Schreiber,</u> but, as noted, that decision did not address the precise question of whether ACV includes labor depreciation in the context of a home insurance policy where, as alleged, RCLD was the agreed-upon methodology for calculating ACV payments.  Moreover, as no extrinsic evidence has been introduced by Defendants, any ambiguity as to the meaning of ACV ought to be resolved in Black's favor.  The Court, thus, concludes that Black has plausibly alleged a breach of contract claim, such that dismissal of his claims would be improper at this stage of the litigation.

Unlike Black's policy with LM, Edelen's Safeco policy defines "actual cash value" as the "cost of materials and labor that would be necessary to repair the damage, less reasonable deduction for wear and tear, deterioration and obsolescence." <u>Id.</u> at 141.  Defendants supply no Maryland authority, however, indicating that a reasonably prudent layperson would construe a "reasonable deduction for wear and tear, deterioration and obsolescence" to encompass labor costs, particularly where, as here, the antecedent clause defines ACV to include the "cost of . . . labor that would be necessary to repair the damage" and the subsequent clause makes no similarly specific reference to labor.  <u>Id.</u>  Because this definition is, at a minimum, ambiguous as to the treatment of labor costs, and given the absence of any parol evidence counseling against resolution

of this ambiguity in Safeco's favor, the Court denies Defendants' Rule 12(b)(6) motion as to Edelen's breach of contract claims.  See Sullins, 667 A.2d at 619.

### 3.    Declaratory Judgment Claims

The Declaratory Judgment Act gives federal courts the discretion to declare the parties' rights.  See 28 U.S.C. § 2201 *et seq.*  A request for declaratory relief "is moot if no 'substantial controversy of sufficient immediacy and reality' exists 'to warrant the issuance of a declaratory judgment.'"  Bos. Bit Labs, Inc. v. Baker, 11 F.4th 3, 9 (1st Cir. 2021) (quoting Town of Portsmouth v. Lewis, 813 F.3d 54, 59 (1st Cir. 2016)).  Plaintiffs' declaratory judgment claims mirror their breach of contract claims.  Thus, for the reasons already discussed, dismissal of the declaratory judgment claims also is not warranted under Rule 12(b)(6).

### C.    Plaintiffs' Rule 15(a)(2) Motion to Amend

Plaintiffs have moved for leave to file the PSAC under Rule 15(a)(2), proposing to add Heather and Joshua Tryon and Craig and Nancy Dobbs, all Arizona residents with properties insured in Arizona, as additional named class representatives.  D. 39; see D. 40-1 ¶¶ 12–13.  They have also filed a related motion to correct an error in the PSAC, D. 57, which identified Liberty as the insurer of the Dobbs' property when it should have identified (and added as an additional defendant) LIC.  Id. at 2.  Defendants oppose Plaintiffs' motions for leave to amend the FAC and to correct the PSAC, arguing that the proposed amendment is futile because the Tryons and Dobbs' claims are time-barred.  D. 44 at 6–10; D. 59 at 1–3.

In support, Defendants proffer the Tryons and Dobbs' respective insurance policies, which can properly be considered by the Court as "documents the authenticity of which are not disputed by the parties" and "documents sufficiently referred to" in the PSAC.  See Erban v. Tufts Med. Ctr. Physicians Org., Inc., 652 F. Supp. 3d 149, 156 (D. Mass. Jan. 23, 2023) (internal quotation

marks omitted).  These policies contain limitations clauses indicating that "[n]o action shall be brought against Defendants unless there has been compliance with the policy provisions and the action is started within one year after the inception of the loss or damage."  See D. 44-1 at 3–4 ¶¶ 6, 14; see id. at 31, 56.  Plaintiffs concede same.  See D. 51 at 3.  The PSAC alleges that the Dobbs suffered a loss on November 19, 2019 and that the Tryons suffered a loss on December 9, 2019.  D. 40-1 ¶¶ 55, 63.

Under Arizona law, parties generally may shorten the statute of limitations that applies to them through an express contractual limitations clause.  See PNC Bank, N.A. v. Stromenger, No. 2-CA-CV 2015-0135, 2016 WL 4434310, at *3 (Ariz. Ct. App. Aug. 22, 2016) (unpublished) (citing Swanson v. The Image Bank, Inc., 77 P.3d 439, 441 (Ariz. 2003)).  However, "in order to enforce such a clause, an insurer must show that it will be prejudiced by the insured's delay in filing suit."  Edson v. Liberty Mut. Holding Co., Inc., No. 11-cv-556-TUC-RCC, 2011 WL 13233432, at *2 (D. Ariz. Dec. 12, 2021) (citations omitted).  The "key factor in the determination of this issue is the question of whether the insurer has shown prejudice by reason of the delay in filing suit.  In the absence of such a showing, it is fair to say that the purpose for which the insurer was given permission to insert the clause will not be served by its enforcement."  Zuckerman v. Transamerica Ins. Co., 650 P.2d 441, 448 (Ariz. 1982).

Beyond a passing reference to prejudice, see D. 44 at 10, Defendants do not explain sufficiently how allowing Plaintiffs' motion to amend would prejudice Defendants.  Instead, Defendants maintain that no showing of prejudice is required under Zuckerman unless the plaintiff has brought a "patently valid claim."  D. 52 at 2.  Citing the declaration of Lisa Seutter, D. 44-1 ¶¶ 11, 20, Defendants assert that the Tryons and the Dobbs both made RCV claims and, thus, their claims concerning ACV payments are moot.  D. 52 at 2.  However, even assuming arguendo that

the Tryons and the Dobbs made RCV claims, they would still be able to maintain an action for any prejudgment interest stemming from the withholding of labor costs corresponding with the initial ACV payments.  See, e.g., Merrill Tenant Council v. U.S. Dep't of Hous. & Urb. Dev., 638 F.2d 1086, 1095 (7th Cir. 1981) (permitting class action to proceed where plaintiffs sought damages in the amount of interest on rental security deposits); In re MF Glob. Holdings Ltd. Inv. Litig., 1 Civ. 7866(VM), 2015 WL 4610874, at *8–9 (S.D.N.Y. July 20, 2015) (certifying class seeking prejudgment interest and lost opportunity cost where "Proposed Class members already received 100 percent of their unpaid net equity claims as part of a prior settlement"); Arnold v. State Farm Fire & Cas. Co., 2:17-cv-00148-TFM-C, 2020 WL 6879271, at *6–7 (S.D. Ala. Nov. 23, 2020) (certifying labor depreciation class notwithstanding the named plaintiff's "status as an 'interest only' claimant," which was "common throughout the class").  Accordingly, the Court allows Plaintiffs' Rule 15(a) motion for leave to file the PSAC to add additional class representatives and, discerning no compelling reason why Plaintiffs' proposed correction to the PSAC should be denied, allows Plaintiffs' motion to correct the PSAC prior to its filing.

## VI.    Conclusion

For these reasons, the Court DENIES Defendants' Rule 12(b)(1) motion to dismiss the FAC and DENIES Defendants' Rule 12(f) motion, alternatively, to strike class allegations. D. 20. The Court DENIES Defendants' Rule 12(b)(6) motion to dismiss the FAC, D. 22, and DENIES as moot Defendants' motion to stay discovery and class briefing, D. 35.  The Court ALLOWS Plaintiffs' motion for leave to file the PSAC and DENIES as moot the portion of that motion that sought to intervene, D. 39, and ALLOWS Plaintiffs' motion to correct, D. 57 (while the predecessor motion, D. 54, is DENIED as withdrawn).  Accordingly, Plaintiffs may file the second

amended complaint consistent with this ruling (i.e., adding Heather and Joshua Tryon and Craig and Nancy Dobbs as additional named class representatives and LIC as a defendant).

      **So Ordered.**

/s Denise J. Casper
United States District Judge
